## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**MELVIN J. HENSON**                                    **CIVIL ACTION**

**VERSUS**                                              **NO:      12-3053**

**CAROLYN COLVIN, ACTING COMMISSIONER OF**              **SECTION: "B" (4)**
**SOCIAL SECURITY ADMINISTRATION**

### REPORT AND RECOMMENDATION

**I.      Introduction**

      This is an action for judicial review of a final decision of the Commissioner of Social Security pursuant to Title 42 U.S.C. § 405(g).  The Commissioner denied Plaintiff, Melvin Henson's ("Henson") protective claim for Supplemental Security Income Benefits under Title XVI of the Social Security Act, Title 42 U.S.C. § 1382c and for Disability Insurance Benefits pursuant to Title II, 42 U.S.C. § 423.

      The matter was referred to the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(b), for the submission of Proposed Findings and Recommendations.

**II.     Background**

      Henson, was a fifty-five-year-old male[1] with a sixth grade education, who previously owned a car lot, where he worked as a used car salesman and repairman.[2]  Henson also alleges that he rebuilt

_____

[1] Henson was fifty five (55) years old on the date of filing.

[2] *See* Rec. Doc. No. 10-2, p. 28; Tr. 29.

old cars for resale, and also replaced bumpers, fenders, carburetor and alternators.[3] He contends that he is entitled to Social Security Supplemental Income and Disability Insurance Benefits as a result of cardiovascular disease, arthritis and high cholesterol, which resulted in him having open heart surgery, Post-Sternotomy syndrome and brain damage.[4]

Henson filed a claim for Supplemental Security Income Benefits and Disability Insurance Benefits on October 7, 2010.[5] On February 24, 2011, the Disability Adjudicator concluded that Henson was not disabled.[6] On March 4, 2011, Henson requested a hearing with the Administrative Law Judge ("ALD").[7] The hearing took place on October 5, 2011. The ALJ issued a written opinion on October 28, 2011.[8]

In its written opinion, the ALJ held that Henson meets the insured status requirements of the Social Security Act through December 31, 2014.[9] The ALJ further held that Henson was not engaged in substantial gainful activity since January 15, 2010, the alleged onset date of his disability. The ALJ also found that Henson has the severe impairment of "Coronary Artery Disease status-post Coronary Artery Bypass Graft" ("CAD status-post CABG").[10] The ALJ further held that Henson does not have an impairment or combination of impairments that meet or medically equal the severity of one of the

---

[3]*Id.* at p. 29; Tr. 28.

[4]*See* Rec. Doc. No. 10-6, p. 6-7, Tr. 158-59.

[5]*See* Rec. Doc. No. 10-2, p. 9-10; Tr. 8-9.

[6]*See* Rec. Doc. No. 10-4, p. 2; Tr. 71.

[7]*See* Rec. Doc. No. 10-2, p. 3-5; Tr. 3.

[8]*Id.* at Tr. 18 & 8-17.

[9]*Id.* at Tr. 10.

[10]*Id.*

listed level impairments in 20 C.F.R. Part 404.[11] (Tr. 11)  The ALJ  also that after careful consideration of the entire record, Henson has the residual functional capacity to perform light work as defined in 20 CFR 404.1567 (b) and 416.967(b,) except that he may only occasionally climb ladders, ropes or scaffolds.

The ALJ concluded that Henson has past relevant work as an auto body repairman (medium, skilled) and as an auto salesman, based upon the vocational expert testimony provided as part of the hearing.  Relying on this testimony, the ALJ also found that the work of an auto salesman does not require the performance of work-related activities precluded by Henson's residual functional capacity ("RFC").[12] Finally, the ALJ held that Henson was not under a disability as defined by the Social Security Act from January 15, 2010 to the present.[13]

On December 28, 2012, Henson filed a complaint seeking review of the ALJ's denial of his request for benefits. In particular, Henson seeks reversal of the ALJ's decision on the basis that its decision is not based upon substantial evidence  for three (3) reasons. First, Henson contends that the ALJ held that Henson's ability to perform one part of his past job meant that he was not disabled, where the regulations require that he possess the ability to perform all parts of his job. Second, the ALJ's decision at Step-Five (5) was contrary to law, because the ALJ concluded that Henson had transferable skills based upon the vocational expert's ("VE") identification of one job, when the Regulations require identification of several jobs. Further, the ALJ failed to identify which skills Henson acquired that are transferable to other work. Third, the ALJ relied upon extra-record evidence to reject all of Henson's treating physician's medical records and opinions with no consultative

---

[11]*Id.* at Tr. 11.

[12]*Id.* at Tr. 15.

[13]*Id.* at Tr. 15-17.

examination.[14]

In response, the Commissioner filed a Reply Brief which argues that the ALJ properly determined that (1) Henson could perform his past relevant work, (2) substantial evidence supports the ALJ's Step Five Determination and (3) the ALJ accorded appropriate weight to Henson's treating physician, and was not obligated to order an additional consultative examination.[15] As a result, the Commissioner contends that the ALJ's decision is not in error as it is based on substantial evidence.

## III.    <u>Standard of Review</u>

The role of this Court on judicial review under Title 42 U.S.C. § 405(g) is to determine whether there is substantial evidence in the record to support the determination of the fact finder.  The Court may not re-weigh the evidence, try issues *de novo* or substitute its judgment for that of the secretary. *Allen v. Schweitker*, 642 F.2d 799, 800 (5th Cir. 1981). If supported by substantial evidence, the secretary's findings are conclusive and must be affirmed.  *Richardson v. Perales*, 402 U.S. 389 (1971); *Wilkinson v. Schweiker*, 640 F.2d 743, 744 (5th Cir. 1981) (citations omitted).

Substantial evidence is more than a scintilla and less than a preponderance, and is considered relevant such that a reasonable mind might accept it as adequate to support a conclusion. *See Richardson*, 402 U.S. at 401.  It must do more than create a suspicion of the existence of the fact to be established, but no "substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "contrary medical evidence." *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973);  *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973).

The concept of disability is defined in the Social Security Act, as the "inability to engage in

---

[14]*See* Rec. Doc. No. 12, p. 1.

[15]*See* Rec. Doc. No. 13.

substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted  . . . for a constructive period of not less than twelve months." *See* 42 U.S.C. §§ 416(i)(1), 423 (d)(1)(A). Section 423(d)(3) of the Act further defines "physical or mental impairment" as meaning "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 423(d)(3).

In determining whether a claimant is capable of engaging in any substantial gainful activity, the Secretary applies a five-step sequential evaluation process. *Carey v. Apfel*, 230 F.3d 131, 134-35 (5th Cir. 2000); citing *Crowley v. Apfel*, 197 F.3d 194 (5th Cir. 1999). The rules governing the steps of this evaluation process are: (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment"; (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and (5) a claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.  *See Villa v. Sullivan*, 895  F.2d 1019, 1021 (5th Cir. 1990). The burden of proof is on the claimant for the first four steps, but shifts to the Secretary at step five.  *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

**IV.** **Analysis**

    **A.** **Ability to Perform Past Relevant Work**

Henson alleges that the ALJ erred when it concluded that he is capable of past work because

he is still able to perform one part of a past composite job. Henson contends that because the ALJ found that his past job was a composite job,[16] the ALJ could only find that he could perform past, relevant work, if he could perform all parts or aspects of the job.[17]

In opposition, the Commissioner contends that Henson's reliance on the Dictionary of Occupational Titles ("DOT") description of a composite job is misguided, as the Vocational Expert ("VE") testified that because Henson's past job combined two separate occupations, i.e. a composite job, there are no specific DOT titles encompassing its duties in the DOT.[18] Thus, the Commissioner contends that the focus of "a step four inquiry in such cases is whether a claimant could perform his or her past work as it was actually performed, rather than how it is generally performed in the national economy as described by the DOT."[19] See POMS DI 25002.020(B). The Commissioner further contends that Henson could perform both components of his past work, as he actually performed them and reported that his work did not include heavy lifting and involved frequent lifting of less than ten (10) pounds.[20]

A claimant is "not disabled at step four if the claimant can perform [her] past relevant work either as the claimant actually performed it or as generally performed in the national economy." *Gallant v. Atrue*, No. 09-357-PS, 2010 WL 2927263 (D. Me. July 20, 2010) *report and*

---

[16]A composite job is one that has significant elements of two or more occupations.

[17]*See e.g.,* Rec. Doc. No. 12.

[18]*See* Rec. Doc. No. 13, p. 4.

[19]*Id.* citing POMS DI 25002.020 (B).

[20]*Id.* at p. 5; citing Tr. 160. *See also* Rec. Doc. No. 13, p. 5. , n. 2 which states "Plaintiff also stated, in contradiction to this statement, that the heaviest weight he ever lifted at his prior job was 100 pounds. The burden of proof is on Plaintiff to show that he could not perform the exertional requirements of his prior job and that the Secretary is not obliged to ignore evidence of non-disability in favor of conflicting evidence."*Leggett*, 67 F.3d 558, 564 (5th Cir. 1995)

*recommendation adopted,* No. 09-357-P-S, 2010 WL 3168270, at \*5-6 (D. Me. Aug. 10, 2010); citing *Malusa v. Astrue,* No. 07-655 (CRP), 2009 WL 2707219, at \*14 (D.Ariz. Aug.25, 2009)(internal quotation marks omitted). That is true of composite jobs, as well, except that each job, within a composite job, must be taken into consideration. *Id. See e.g*., SSR 82-61 at 838 (composite jobs must be "evaluated according to the particular facts of each individual case"). An ALJ "may not deem a claimant capable of performing past relevant work by dividing the demand of a composite job into separate jobs and finding him capable of performing the less demanding of the two jobs." *Gallant,* 2010 WL 2927263, at \*5-6.

Rather, an ALJ must analyze whether a claimant can perform each job within a composite job, whether as actually performed or as generally performed in the national economy. *Roberts v. Astrue*, No. 8:08-CV-120-T-17EAJ, 2009 WL 722550 at \*3, n.3 (M.D.Fla. March 18, 2009) (an ALJ may not separate a composite job into two jobs and fail to focus on all the demands of the composite job); *Armstrong v. Sullivan*, 814 F.Supp. 1364, 1372 (W.D.Tex.1993) (ALJ improperly divided composite job of cook/cashier into two jobs and focused on less demanding job of cashier); *Taylor v. Bowen*, 664 F.Supp. 19, 22-23 (D.Me.1987) (ALJ improperly separated past position of office worker/receptionist and focused only upon demands of receptionist job).

The ALJ record evidences that the VE testified that Henson's past relevant work was a combination of the two occupations, an auto body repairmen and an auto salesman; which was not provided for in any DOT title.[21] The record also evidences that the VE concluded that Henson could perform the work of an auto salesman as he actually performed it, as well as how it is performed in the national economy. However, the VE did not conclude that Henson could perform both jobs, as

---

[21]*See* Rec. Doc. No. 10-2, Tr. 35-37.

the Commissioner now contends.[22] The ALJ held that in comparing Henson's RFC with the physical and mental demands of his work, he would both be able to actually perform and generally perform (as done in national economy) the work of a salesman. However, the VE testified that the work performed by Henson in his job as an automobile body repairer was classified as a medium, SVP-7 skilled work; and that his work as an automobile salesman was classified as light, SVP-6, skilled work.[23]

During the hearing, the ALJ also asked the VE if there were any jobs that existed, from an exertional standpoint, where an individual could engage in light exertion, and occasionally climb ladders, ropes, and scaffolds. The VE concluded that based upon Henson's prior work activity, he could perform a <u>component</u> of his past work as a car salesman, but not as an automobile body repairman. The ALJ also found that Henson would have acquired skills performing the work as a salesman as typically performed in the economy.

Upon further questioning, the ALJ held that if an individual was limited to standing and walking two hours in an eight-hour workday, with occasional posture limitation, that individual could not perform his past relevant work. When the ALJ further questioned the VE as to if this same individual also had a memory problem, and was limited to simple repetitive tasks, whether he would be able to perform his past relevant work, the VE concluded that with all the limitations referenced, that individual would not be able to perform his past relevant work.[24]

The ALJ's decision clearly indicates that the least restrictive job duty was found when it concluded that Henson could perform work as a salesman. While the ALJ relied upon the VE's

---

[22]*See* Rec. Doc. No. 10-2, p. 16-18; Tr. 15-17.

[23]*See id.* at. n. 21.

[24]*Id.*

testimony that Henson could still do his past, light work duty as a salesman, the ALJ did not find that Henson could return to the component job of a repairman, which the VE classified as a medium duty job. Instead, the ALJ held that Henson had the RFC to work as a salesmen, as generally performed in the national economy.

However, in *Armstrong v. Sullivan*, 814 F.Supp. 1364, 1372 (W.D.Tex.1993), the Court held that where the ALJ's decision divides the components of a claimant's "composite" job, and focuses on the less demanding job, as in this case (i.e., a salesman and a repairman), the decision is in error. Classifying the clamant's past relevant work according to the least demanding function (salesman) of his past job was contrary to the spirit of the Social Security Act. In fact, because Henson's job was a composite job which required him to perform the duties of both a repairman and a salesman, then it is manifest that an RFC limited to light work would preclude his ability to perform his past job, as the repairmen component of his work is considered medium level work. Even the VE's opinion clearly indicates that Henson is precluded from performing the repairmen component of his job. As a result, the Court finds that while the ALJ utilized a VE to consider Henson's limitations, it only concluded that Henson could perform the least skilled component of his composite job, which means that he could not do his past relevant work. Therefore, the Court finds that the ALJ erred in its conclusion that Henson was able to perform both aspects of his past relevant work.

### B.   <u>Alternate Step Five Determination</u>

Henson contends that the ALJ erred in moving to Step Five (5) concluding that he could perform past relevant work, and was therefore not disabled.  Henson also contends that the ALJ's decision is not based upon substantial evidence, and the decision should be reversed and benefits awarded.

In contrast, the Commissioner contends that the ALJ properly determined that Henson could

9

perform other work that exists in significant numbers in the national economy. The Commissioner contends that even though the ALJ did not identify a job that Henson could perform, such a determination is irrelevant, as the grids of impairment directed a non-disability rating. The Commissioner further contends that although the VE failed to identify the particular transferable skills Henson could perform, this oversight constitutes harmless error, and does not warrant reversal. Finally, the Commissioner contends that the Step Four (4) determination was supported by substantial evidence.

The ALJ relied upon expert opinion that Henson could perform his past relevant work as a salesman.[25] The ALJ held although Henson has limitations which limit his ability to perform the full range of light work, when considering his age, education and transferable work skills, a finding of not disabled was supported by the Medical-Vocational Rule 202.12 and Rule 202.03.[26] The ALJ found that based upon the VE's testimony, Henson had acquired past work skills. However the ALJ made no findings as to the transferability of any acquired skill, nor did he identify the particular skills that Henson possesses. The ALJ's opinion also does not provide a description of the skills Henson acquired, and their transferability, given his age and medical impairments.

It is settled that once the claimant establishes at step four that he is unable to perform any of his past relevant work, the burden shifts to the Commissioner at step five to show "that there is other gainful employment available in the national economy that the claimant is capable of performing." *Yanez v. Colvin*, No. 3:12–CV-1796-K, 2013 WL 4766836, at *8 (N.D.Tex. Sept. 5, 2013) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236). To guide this determination, the Commissioner

---

[25]*See id.* at Tr. 15-17.

[26]*Id.* at Tr. 17.

promulgated the medical-vocational guidelines (Guidelines or Grids). *Smith v. Astrue*, No. 3:08–CV–1241–N, 2009 WL 1203407 at *9 (N.D.Tex. May 1, 2009). If the claimant's impairments are solely exertional, or the nonexertional impairments do not sufficiently affect the RFC, the Commissioner may rely exclusively on the Guidelines to make a step five determination. *Id.* (citing *Newton v. Apfel,* 209 F.3d 448, 458 (5th Cir.2000); (*Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir.1987)). On the other hand, "[w]here a claimant cannot perform the full range of a specific level of work activity or has significant nonexertional impairments, the ALJ may not mechanically apply the Grids, although they may be used as a framework." *Rivera v. Astrue*, No. 6:08–C–075–C, 2010 WL 711717, at *4 (N.D.Tex. Mar. 2, 2010). In that case, the ALJ must "make an individualized determination of the claimant's ability to perform specific jobs in the national economy" by obtaining testimony from a VE. *Id.;Yanez*, 2013 WL 4766836, at *8.

Before a claimant of age fifty-five or older, who does not have the ability to perform a full range of light work is found to be disabled, the ALJ must consider "the impact of the limitations or restrictions on the number of light skilled occupations or the total number of jobs to which the claimant may be able to adjust, considering his age, education and work experience including any transferable skills." *See* 20 C.F.R. 404.1563 (e); 20 C.F.R. 404 Supt. P. App. 2 §202.00 (2013). Consequently, whether a claimant is or is not disabled may sometimes depend on solely whether he or she has skills that are "transferable" to other jobs. *Id.*; *Muehling v. Colvin*, No. 12-013, 2013 WL 1194078, at *5 (N.D. Tex. March 6, 2013), *rec. adopted*, 2013 WL 1197740 (N.D. Tex. March 25, 2013)("if the claimant has transferable skills, he is not disabled; if he does not have transferable skills he is disabled").

A claimants skills are transferable when the "skilled or semi-skilled work activities that he has done in the past can be used to meet the requirements of skilled or semiskilled work activities of

other jobs or kinds of work." *See* 20 C.F.R. §404.1568(d)(1), 416.968 (C ). The transferability of skills depends largely on the similarity of occupationally significant work activities among the different jobs. *Jeffcoat v. Sec'y of Health & Human Servs.,* 910 F. Supp. 1187, 1194 (E.D. Tex. 1995). Transferability "is most probable or meaningful with jobs where the same or lesser degree of skill is required because people are not expected to do more complex work than they have previously performed." *Rivera,* 2010 WL 711717, at *4.

As SSR 82-41 explains, the "transferability of skills is an issue only when an individual's impairment, though severe, does not meet or equal the criteria" of a listed impairment, but "does prevent the performance of past relevant work, and that work has been determined to be skilled or semiskilled." *See* S.S.R. 82-41, 1982 WL 31389, at *1.[27] When the issues of skills and their transferability must be decided, the ALJ is required to make certain findings of fact and include them in his written decision." *Id.* at *7.  If a claimant is found to have "transferable skills, the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the ALJ's decision."  *Id.*

The Fifth Circuit has not addressed the issue of whether the ALJ has erred when neither he nor the VE upon whom he relies identifies the transferable skills, and / or the specific occupations

---

[27] S.S.R. 82-41 provides in relevant part: "[w]hen the issue of skills and their transferability must be decided, the ALJ is required to make certain findings of fact and include them in the written decision. Findings should be supported with appropriate documentation. When a finding is made that a claimant has transferable skills, the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the ALJ decision for the claimant and for a reviewing body including a Federal District Court." *See* S.S.R. 82-41, 1982 WL 31389, at *7. Sections 223(d) (2) (A) and 1614(a) (3) (B) of the Social Security Act; Regulations No. 4, sections 404.1520(f), 404.1545, 404.1561, 404.1563, 404.1565, 404.1566 and 404.1568; Regulations No. 16, sections 416.920(f), 416.945, 416.961, 416.963, 416.965, 416.966 and 416.968; and Appendix 2, Subpart P of Regulations No. 4, sections 200.00(b), 201.00(e), 201.00(f), 202.00(e) and 202.00(f); citing TITLES II AND XVI: WORK SKILLS AND THEIR TRANSFERABILITY AS INTENDED BY THE EXPANDED VOCATIONAL FACTORS REGULATIONS EFFECTIVE BETWEEN FEBRUARY 26, 1979, 1982 WL 31389, at *7.

to which the acquired work skills are transferable.[28] Here, however, the Commissioner concedes that the ALJ erred, but argues that this error was harmless.

The ALJ found that Henson was a person closely approaching "advanced age" as of the onset date,[29] with limited education and the ability to communicate in English. The ALJ used the VE's testimony that Henson acquired transferable skills as a salesman which were within his limitations, to find that Henson could work as a salesman.[30] Alternatively, the ALJ found that Henson acquired transferable work skills from past relevant work, which could transfer to other occupations with jobs existing in significant numbers in the national economy.[31] As a result, the ALJ concluded that Henson was not disabled.

However, the ALJ committed a procedural error in the disability determination process which casts doubt on the contention that its decision was based on substantial evidence, as the

---

[28]Several district courts in this Circuit as well as other courts have held in the affirmative. See, e.g., *Muehling*, 2013 WL 1194078, at *4 (finding that the VE's testimony that the claimant had transferable "customer service skills" was "insufficient" to support the ALJ's transferability determination because the ALJ did not solicit testimony from the VE, or otherwise make independent findings, regarding the definition of a "customer service skill" or its transferability "to the jobs listed by the VE"); *S.W.O. v. U.S. Com'r Soc. Sec. Admin.*, No. 11–CV–0067, 2012 WL 967775, at *4 (W.D.La. Mar.2, 2012), rec. adopted, 2012 WL 966167 (W.D.La. Mar.20, 2012) (finding reversible error where the ALJ did not make explicit transferability findings and there was "no evidence about either the skills [the] Plaintiff gained from her past relevant work or whether those skills would transfer to the job identified by the VE"); *Rivera*, 2010 WL 711717, at *5 (holding that the ALJ erred by failing to make a proper transferability determination; explaining that on remand, the ALJ should develop the record to "includ[e] information regarding whether [the] Plaintiff acquired transferable skills from her past work and identi[fy] [ ] such skills"). *See also Draegert v. Barnhart*, 612 F. Supp. 468(2d. Cir. 2002) the court held that specific findings on transferable skills are necessary even where the ALJ relies on the testimony of a vocational expert. *See Also Tanksley v.Colvin,* 2013 WL  5350912 ( N.D. Tex. Sept. 24, 2013). These holdings are supported by the regulations and relevant rulings, which make evident that a claimant acquires transferable skills from his or her personal work experience. See 20 C.F.R. § 404.1565(a) (2012) ("Work you have already been able to do shows the kind of work that you may be expected to do.") (emphasis added); SSR 83–10, 1983 WL 31251, at *3 (S.S.A 1983) (The "[a]bility to perform skilled or semiskilled work depends on the presence of acquired skills which may be transferred to such work from [the claimant's] past job experience above the unskilled level ... .").

[29]Henson's age had progressed to advanced age during the pendency of the proceding.

[30]*See* id., at Tr. 16.

[31]*Id.*

determination of Henson's disability turned on whether he possessed transferable skills. There is no reference either in the ALJ's opinion nor the VE's testimony about the skills that Henson acquired in the component job of salesman. Accordingly, the ALJ's error prejudiced Henson's claim. Therefore, ALJ's error was not harmless, and remand of this claim is appropriate.  Compliance with S.S.R. 82-41 is required, i.e. specific findings of fact that delineate the transferable skills as including the specific occupations for which the skills are transferable.

## V.     Recommendation

**IT IS RECOMMENDED** that the ALJ's decision denying Melvin Henson's Supplemental Security Income Benefits and Disability Insurance Benefits be **REVERSED** and **REMANDED**  to the  Commissioner for further proceedings consistent with this opinion.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[32]

New Orleans, Louisiana, this 18th day of February, 2014.

KAREN WELLS ROBY
**UNITED STATES MAGISTRATE JUDGE**

---

[32]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

14